301 So.2d 695 (1974)
Mrs. Edmond C. WATKINS, Plaintiff and Appellant,
v.
LOUISIANA HIGH SCHOOL ATHLETIC ASSOCIATION et al., Defendants and Appellees.
No. 4706.
Court of Appeal of Louisiana, Third Circuit.
October 16, 1974.
*696 Camp, Carmouche, Palmer, Carwile & Barsh, by Edwin K. Hunter and A. J. Gray, III, Lake Charles, for plaintiff-appellant.
Talley, Anthony, Hughes & Knight, by Lawrence R. Anderson, Jr., and Charles M. Hughes, Bogalusa, for defendant-appellee.
Before HOOD, CULPEPPER and DOMENGEAUX, JJ.
CULPEPPER, Judge.
Mrs. Edmond C. Watkins filed this suit against the Louisiana High School Athletic Association and its chief executive officer, Mr. Frank Spruiell. She seeks a "preliminary injunction, enjoining enforcement of its [LHSAA] February 19, 1974 ruling, prohibiting Fenton High School from playing in any athletic contest for one year with Mrs. Edmond C. Watkins in attendance and enjoining any action to exclude plaintiff from any atheltic event or any action penalizing Fenton High School for plaintiff's attendance at any athletic event." Plaintiff also seeks damages totaling $90,000.
Defendants filed exceptions of no right of action and no cause of action. The trial judge sustained both exceptions and dismissed plaintiff's suit. Plaintiff appealed.
The substantial issues are: (1) Under the pleadings, and the evidence introduced at the hearing on the exception of no right of action, does plaintiff have a sufficient interest to institute this suit? (2) Does plaintiff's petition as amended state a cause of action?

THE EXCEPTION OF NO RIGHT OF ACTION
Evidence adduced at the hearing on the exception of no right of action consists of interrogatories propounded by plaintiff to the defendants, the answers and supplemental and amending answers by defendants to the interrogatories, and depositions of plaintiff, her husband and Mr. Richard McNabb, coach of the boys varsity basketball team at Fenton High School. This *697 evidence, together with the pleadings, shows that the Louisiana High School Athletic Association is an unincorporated association whose membership is voluntary and consists of approximately 450 high schools in the state. Each high school is represented in the association by its principal. The constitution of the association states that its general purpose is "to promote, regulate and direct the interscholastic athletic activities of the high schools of Louisiana."
One of the specific purposes of the association is "to promote the spirit of sportsmanship and fair play in all athletic contests." (Louisiana High School Athletic Association Constitution, Art. 2, Sec. 5.)
Article VII of the Constitution provides the duties of all faculty members, students, spectators, etc., as to sportsmanship as follows:
"It is the clear obligation of principals, coaches, faculty members, students, fans, and all representatives of member schools, in all interscholastic relationships with students, fans, officials, players, coaches, representatives of member schools, and the general public, to practice the highest principles of sportsmanship and the ethics of competition."
This article also establishes a sportsmanship committee to hear all complaints and provides the procedure for such hearings. As to penalties which may be imposed upon a member school, where the sportsmanship committee determines that the particular member school has engaged in unsportsmanlike conduct, the bylaws of the association provide in Article IV, Section 10 that the association may:
"(k) Require that schools held in violation at a sportsmanship hearing be directed not to participate in any interscholastic contest with certain spectators in attendance, who contributed to the offense."
Under these provisions of its constitution and bylaws, one of the sanctions employed on many occasions by the Louisiana High School Athletic Association, to regulate and enforce sportsmanship, is to require that the member schools held in violation at a sportsmanship hearing be directed not to participate in any interscholastic contest with certain spectators in attendance who contributed to the offense of the school. The association does not attempt to apply its sanctions as to unsportsmanlike conduct to the individual players or spectators, such as plaintiff, who are not members of the association. In its answer to plaintiff's interrogatories, the Louisiana High School Athletic Association states that it has imposed this sanction against member schools in numerous cases involving unsportsmanlike conduct of fans, without discrimination, privilege or prejudice.
In the present case, Mr. Frank Spruiell, the commissioner of LHSAA, received two written complaints of unsportsmanlike conduct by Mrs. Edmond C. Watkins, a Fenton High School fan, at the basketball game between Midland High School and Fenton High School played at Midland on February 8, 1974. One of these complaints was from Mr. Raymond S. Perot, a game official, and the other from Mr. Andrew Pousson, principal of Midland High School. These complaints charged that immediately after the game Mrs. Watkins went onto the floor of the gymnasium and approached one of the game officials, Mr. Oran Meche, and that she complained to him about the manner in which he called the game and grabbed him by the arm.
On receipt of these complaints, Mr. Spruiell investigated the matter and then called a meeting of the sportsmanship committee to hear the complaints. The principals of the two high schools involved were notified and were requested to bring all witnesses and interested parties, including the fan involved, to testify at the hearing.
At the hearing before the sportsmanship committee on February 18, 1974, the representatives of each of the two schools involved attended and were allowed to question *698 and cross-examine the witnesses. Mrs. Watkins and her husband were present and were requested to testify. However, they refused to testify and chose only to submit affidavits, which were read into the record.
After the hearing, the sportsmanship committee issued the following ruling: (1) Fenton High School was fined $75 and placed on probation for one calendar year from February 18, 1974. (2) Fenton High School was forbidden to participate in any interscholastic athletic contests for one calendar year from February 18, 1974, with Mrs. E. C. Watkins in attendance. The association sent copies of this ruling by letter to representatives of each high school and the officials' association.
Mrs. Watkins alleges that since the ruling was issued, she has been humiliated by the fact that principals of participating schools search the audience for her before allowing Fenton to begin play. She alleges further that, at the Top-20 basketball tournament in March of 1974, Commissioner Spruiell informed the principal of Fenton High School that should Mrs. Watkins come into the coliseum "the game would be stopped and Fenton would be allowed two minutes to get the fan out of the coliseum or the game would be forfeited." She asserts abridgement of her rights of free speech and assembly, invasion of her privacy and damage to her reputation. Specifically, she alleges that she has been embarrassed and humiliated in the eyes of her neighbors and her own children by the ruling which brands her as being unsportsmanlike. For all of these reasons, plaintiff urges that she has a right or interest to institute this suit to enjoin the enforcement of the association's ruling. She also seeks damages.
The argument of the Association is that plaintiff has no right or interest in the disciplinary action taken by the Association against one of its members, Fenton High School. The Association contends that the only party which has a right or interest in contesting the ruling by the Association is Fenton High School, and it has not chosen to do so. The Association says that the ruling does not prohibit the plaintiff from attending Fenton High School games, and that Fenton High School has been given a choice by the Association either to continue participating in the Association's athletic events without the attendance of plaintiff for one year or to discontinue such participation. Although the defendant Association admits this is a difficult choice for Fenton High School, it says this is the identical sanction applied to many other member schools in the past involving similar situations. The Association says it has always placed the responsibility of controlling spectators' conduct upon its member high schools and that this is reasonable, necessary and proper so long as it is done without discrimination, privilege or prejudice.
LSA-C.C.P. Article 927(5) provides that one of the peremptory exceptions is: "No right of action, or no interest in the plaintiff to institute the suit." The essential function of this exception is to provide a threshold device for terminating a suit brought by one without the legal capacity to file it or without the legal interest to assert it, Bielkiewicz v. Rudisill, 201 So.2d 136 (3rd Cir. 1967) and the authorities cited. In the present case, there is no question that Mrs. Watkins has the legal capacity to file this suit. The only question is whether she has a sufficient legal interest in the subject matter of the litigation, assuming that a valid cause of action is pleaded by the petition.
Of course, evidence is admissible at the hearing on an exception of no right of action to show that plaintiff has a legal interest, LSA-C.C.P. Article 931. Furthermore, jurisprudence has firmly established the rule that the exception of no right of action is not available to urge a defense to the effect that the plaintiff is without interest simply because the defendants have a defense, Wischer v. Madison Realty Company, 231 La. 704, 92 So.2d 589.
*699 Applying these rules to the present case, we hold that Mrs. Watkins has a sufficient legal interest to institute this suit, assuming that a valid cause of action has been alleged. The evidence shows that the ruling of the Louisiana State High School Athletic Association has the effect of preventing her from attending the athletic contests in which Fenton High School participates for a period of one year. For all practical purposes, the ruling complained of has prevented plaintiff from associating with her friends and her family when they attend the high school athletic events of Fenton High School.

THE EXCEPTION OF NO CAUSE OF ACTION
The peremptory exception of no cause of action, LSA-C.C.P. Article 927(4), questions whether the law affords any remedy to the plaintiff under the allegations of his petition. No evidence may be introduced in support of the exception of no cause of action, LSA-C.C.P. Article 931. It is triable solely on the face of the pleadings. All well pleaded facts of the petition and any annexed documents must be accepted as true, with all doubts being resolved in favor of the sufficiency of the petition to state a cause of action. The exception must be overruled unless the allegations affirmatively establish that under no facts admissible in evidence does the plaintiff have a cause of action. The allegations must exclude every reasonable hypothesis of facts other than those showing that plaintiff could not recover as a matter of law. See Steagall v. Houston Fire & Casualty Insurance Company, 138 So.2d 433 (3rd Cir. 1962).
Plaintiff's petition alleges that after the basketball game she "approached a referee employed by defendant, Oran Meche, and engaged him in conversation critical of his conduct as referee, especially with regard to the number of personal fouls Meche called against the Fenton team in three games that evening. At no time did plaintiff act in an unladylike manner or touch or threaten to touch defendant's referee."
Plaintiff then alleges that as a result of this incident the above described ruling of the Association was issued on February 19, 1974. She alleges that as a result of the ruling she has been prevented from attending any of the interscholastic events in which Fenton High School participates; that she has been humiliated and embarrassed; and that the ruling has had a chilling effect on her exercise of her right of free speech and assembly. Plaintiff alleges that defendant's action constitutes "state action" inasmuch as defendant is the agent of over 300 public high schools supported and supervised by the State of Louisiana.
Plaintiff further alleges that the defendant has invaded her right to privacy protected by the First, Third, Fourth, Fifth and Ninth Amendments of the Federal Constitution by making her attendance at basketball games a matter of public knowledge and concern as well as causing comments in the press as to her attendance at such games.
Plaintiff further alleges that the defendant deprived her of her Fourteenth Amendment right to due process by failure to promulgate or publish the rule plaintiff is punished for allegedly violating. She avers that there was no notice posted in the gymnasium, on plaintiff's ticket or in any other place stating that spectators were forbidden to engage referees in conversation or to touch them.
She alleges further that a penalty was imposed upon her without written notice to her of the specific charges against her or advising her of the time and place of the hearing or giving her an opportunity to hear and cross-examine the witnesses against her.
Finally plaintiff alleges that the ruling of the Association has embarrassed and humiliated her in the eyes of her neighbors and her children and that by reason thereof *700 she is entitled to damages for mental and physical stress, loss of privacy, loss of the pleasure of attending the Fenton High School games and loss of reputation, for which damages in the total sum of $90,000 should be paid.
The principal argument made in support of the exception of no cause of action is that the Louisiana High School Athletic Association is a private unincorporated association composed of high schools who voluntarily join and agree to abide by its constitution and bylaws. Defendant relies heavily on cases in which players have attacked eligibility rulings of the Louisiana High School Athletic Association, and in which the courts have held that participation by players in athletic contests is a mere privilege, not a constitutionally protected right. See Mitchell v. Louisiana High School Athletic Association, 430 F.2d 1155 (5th Cir. 1970) and Marino v. Waters, 220 So.2d 802 (1st Cir. 1969).
Plaintiff's argument focuses upon her contention that the ruling of the LHSAA is "state action" within the meaning of the Fourteenth Amendment to the Constitution of the United States. As authority for that argument she cites Louisiana High School Athletic Association v. St. Augustine High School, 396 F.2d 224 (5th Cir. 1968).
We quote the following language from our decision in Sanders v. Louisiana High School Athletic Association, 242 So.2d 19, 28-29 (La.App.3rd Cir. 1970), in which we distinguished the St. Augustine case and held that the ruling made by the Association was not state action:
"The St. Augustine High School case was one involving an issue of racial segregation and the constitutional questions which accompany a case of that kind. No segregation or constitutional questions are presented here. Our state courts have regarded Louisiana High School Athletic Association as a private association, and the state courts of all other states, as far as we have been able to determine, have considered similar organizations in those states to be private associations. We find, therefore, that the defendant association here is a private, voluntary, unincorporated association, and that the above-cited statutes and jurisprudence relating to such associations are applicable."
Adhering to the above stated rule, we conclude that the ruling of the Association in the present case is not state action. Therefore, plaintiff has failed to state a cause of action which brings her within the protection provided by the Fourteenth Amendment.
Defendants also rely on another rule stated in Sanders v. Louisiana High School Athletic Association, supra, as follows:
"The general rule in Louisiana is that the courts will not interfere with the internal affairs of a private association, except in cases where the affairs and proceedings have not been conducted fairly and honestly, or in cases of fraud, lack of jurisdiction, the invasion of property or pecuniary rights, or when the action complained of is capricious, arbitrary or unjustly discriminatory." (Citations omitted)
Counsel for defendants concede there are no cases from our appellate courts involving the specific question of whether an athletic association can discipline a member school, by requiring that the school not participate in athletic contests with a particular spectator in attendance. But they argue that since the cases hold a player has no constitutional right to participate in an athletic contest between members of a private unincorporated association, it necessarily follows that a spectator has no constitutional right to attend such interscholastic athletic contests.
The defendant argues further that even conceding for the sake of argument that a spectator has a constitutional right to attend *701 such games, this right is subject to reasonable nondiscriminatory limitations which can be established by the Association. Defendant contends that in the present case there are no allegations by plaintiff that the proceedings out of which the ruling arose were conducted unfairly or dishonestly, or that there was fraud, or lack of jurisdiction over the member school, or that there was an invasion of property or pecuniary rights, or that the action complained of was capricious, arbitrary or unjustly discriminatory, these being the requirements for a cause of action under the exceptions to the general rule as quoted above from the Sanders case.
The only allegations of plaintiff's petition as to impropriety of the proceedings before the sportsmanship committee are that she was not given written notice of the specific charges against her, or of the time or place of the hearing, or the right to call witnesses, or to hear and cross-examine the witnesses. But the ruling of the sportsmanship committee which is attached to plaintiff's petition states that everyone present was given the opportunity to be heard, and the opportunity to present all evidence to the committee.
We conclude that even assuming for the sake of argument that the plaintiff has a constitutional right to be a spectator at interscholastic athletic contests in which Fenton High School participates, this right is subject to reasonable nondiscriminatory limitations established by the rulings of the Louisiana High School Athletic Association, which is a private unincorporated association. The above stated rule from the Sanders case is applicable here, that the courts will not interfere with the internal affairs of a private association except in cases when the affairs and proceedings have not been conducted fairly and honestly, or in cases of fraud, lack of jurisdiction, the invasion of property or pecuniary rights, or when the action complained of is capricious, arbitrary or unjustly discriminatory. In the present case, plaintiff has not alleged facts which bring this case within any of these exceptions.
For the reasons assigned, the judgment of the district court is reversed and set aside insofar as it sustains the exception of no right of action. The judgment is affirmed insofar as it sustains the exception of no cause of action. All costs are assessed against the plaintiff appellant.
Reversed in part and affirmed in part.